**In re Gary Steven LAMB & Charles Granville Lamb, partners d/b/a Rubenstein's, Debtors.**

**Richard P. JAHN, Jr., Trustee, Plaintiff,**

v.

**Gary Steven LAMB & Charles Granville Lamb, Defendants.**

**Bankruptcy No. 1–81–02256.
Adv. No. 1–82–0424.**

United States Bankruptcy Court,
E.D. Tennessee.

May 19, 1983.

Patrick C. Taintor, Tanner, Jahn, Atchley, Bridges & Jahn, Chattanooga, Tenn., for plaintiff.

Henry K. Jarrett, III, Hanish, Davenport, Rosenberg & Weiner, Louisville, Ky., for defendant, Charles Granville Lamb.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

Gary Lamb, doing business as Rubenstein's, a partnership, filed a voluntary petition in bankruptcy naming Charles Lamb as his partner. The trustee in bankruptcy brought this action against Charles and Gary Lamb to hold them liable as partners for the deficiency in the partnership's assets to meet its liabilities. Charles Lamb denied being a partner and demanded a jury trial. This memorandum deals with whether Charles Lamb is entitled to a jury trial.

The Bankruptcy Reform Act of 1978 expanded the jurisdiction of the bankruptcy courts. The expanded jurisdiction of the bankruptcy courts did away with the "summary-plenary" jurisdictional distinction that was most troublesome in cases under the Bankruptcy Act. 1 Collier on Bankruptcy ¶ 3.01 at 3–46—3–47 (15th ed. 1982).

The summary-plenary distinction was used not only to determine whether the bankruptcy court had jurisdiction but also to determine whether a party was entitled

---

to a jury trial. In summary proceedings there was no right to a jury trial. In plenary proceedings the right depended on the applicable statutes and general principles. See Walls, Jury Trials in Bankruptcy Court, 1982 Annual Survey of Bankruptcy Law 417, 418.

Though the summary-plenary distinction was abolished for jurisdictional questions, it may still apply in determining whether a party is entitled to a jury trial. The relevant statute is 28 U.S.C. § 1480:

(a) Except as provided in subsection (b) ... this chapter and title 11 do not affect any right to trial by jury in a case under title 11 or in a proceeding under title 11 or in a proceeding arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.

(b) The bankruptcy court may order the issues arising under section 303 of title 11 to be tried without a jury.

It is not at all clear what § 1480(a) means:

There are at least three possible ways of construing Section 1480. One view is that bankruptcy courts are coextensive with federal district courts by virtue of Section 1480. Consistent with this view, only the Seventh Amendment to the United States Constitution and federal statutes govern the right to jury trial in bankruptcy courts. The historical nature of that court is not considered in this analysis.

At the opposite pole, the Supreme Court's pronouncement in *Katchen v. Landy* [382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)] can be read to mean that all proceedings brought in bankruptcy court are equitable .... Accordingly, there is no right to a jury trial in bankruptcy court.... This view ignores the literal language of the statute....

The third construction occupies the middle ground between these poles. Under this view Section 1480 is in essence a codification of the status quo when the Code was enacted.... Though this analysis retains the troublesome summary/plenary distinction, it recognizes the

historical nature of the bankruptcy court. Moreover, this view is consistent with the statutory language which "continues any current right" but does not create a new right to jury trials in the bankruptcy court. Walls, supra, at 423.

The third view, or "middle ground", is essentially the same as the second view, if the Supreme Court's broad statements in *Katchen v. Landy* about the equitable nature of bankruptcy proceedings are understood as referring only to summary proceedings. This reduces the choice to two views: the right to a jury trial is determined either (1) according to general principles, as in the district court, or (2) by first applying the summary-plenary distinction. The courts have treated the question as presenting this choice. See *In re Fleming*, 8 B.R. 746, 7 B.C.D. 252, 3 C.B.C.2d 589 (N.D.Ga.1980) (1); *In re Mozer*, 10 B.R. 1002, 7 B.C.D. 819 (Bkrtcy.D.Colo.1981) (2); *In re Frank Meador Buick, Inc.*, 8 B.R. 450, 7 B.C.D. 416, 3 C.B.C.2d 817 (Bkrtcy.W. D.Va.1981) (1); *In re G.S.F. Corp.*, 7 B.R. 807, 3 C.B.C.2d 267 (Bkrtcy.D.Mass.1980) (2); *In re Lafayette Radio Electronics Corp.*, 7 B.R. 187, 6 B.C.D. 1197, 3 C.B.C.2d 267 (Bkrtcy.E.D.N.Y.1980) (2); *In re Patterson*, 6 B.R. 149, 6 B.C.D. 969 (Bkrtcy.S.D. Ohio 1980).

The courts that adopt the first view generally conclude that the abolition of the summary-plenary distinction for jurisdictional purposes also made it inapplicable in determining whether a party is entitled to a jury trial. This conclusion does not follow from abolition of the distinction for jurisdictional purposes or from § 1480. These courts also reason that using the summary-plenary distinction to determine the right to a jury trial will re-institute the delays that were caused by jurisdictional litigation under the prior law. Of course, using the distinction on the jury trial question is not the same as using it to determine what court can try the case and should not result in the same kind of delay. Furthermore, the more liberal use of jury trials under the first view could itself cause delays in proceedings for which the "summary" designa-

tion recognized the special need in bankruptcy for quick action by the court. As to the expanded jurisdiction of the bankruptcy courts, the expansion appears to have been mostly in the area of proceedings that would have been classified as "plenary" and subject to the right to a jury trial under general principles.

■ In any event, the court need not decide which view to apply. Assuming that the summary-plenary distinction applies, the defendant is still entitled to a jury trial on the issues raised by the complaint. Surely he would be entitled to a jury trial under the other interpretation of § 1480.

The trustee seeks to recover from Charles Lamb under 11 U.S.C. § 723:

(a) If there is a deficiency of property of the estate to pay in full all claims allowed in a case under this title concerning a partnership, then each general partner in such partnership is liable to the trustee for the full amount of such deficiency.
(b) To the extent practicable, the trustee shall first seek recovery of such deficiency from any general partner in such partnership that is not a debtor in a case under this title. Pending determination of such deficiency, the court may order any such partner to provide the estate with indemnity for, or assurance of payment of, any deficiency recoverable from such partner, or not to dispose of property.

The court is concerned with the nature of a proceeding to establish a person's liability as a general partner.

*Francis v. McNeal* dealt with an involuntary bankruptcy petition filed against a partnership and three men alleged to have been general partners. 228 U.S. 695, 33 S.Ct. 701, 57 L.Ed. 1029, 30 A.B.R. 244 (1913). One of the three individuals denied he was a partner. The referee in bankruptcy held that he was a partner and that his separate estate was subject to administration in bankruptcy. The referee also ordered certain property turned over to the partnership's trustee in bankruptcy. The Supreme Court held that a turnover of the property to the partnership trustee was proper.

On the contrary, we should infer from section 5, clauses c through g, that the assumption of the Bankruptcy Act was that the partnership and individual estates both were to be administered, and that the only exception was the one in h, "in the event of one or more, but not all, of the members of a partnership being adjudged bankrupt."

In that case, naturally, the partnership property may be administered by the partners not adjudged bankrupt and does not come into bankruptcy at all except by consent....

33 S.Ct. at 702.

In another case, the court of appeals said:

It undoubtedly has been held in some cases that the bankruptcy court can administer upon the estate of non-bankrupt partners. [Citations omitted.] But these cases proceed upon the theory that a firm may be bankrupt although some of its members remain solvent. And this theory, as we have pointed out already, appears to be contrary to the view expressed by the Supreme Court in the recent case of *Francis v. McNeal, supra.*

It would be much more accurate to say that the question is whether, when no petition in bankruptcy has been filed against him, an individual who asserts under oath that he is not a partner can be summarily adjudicated a partner on an inquiry before a referee in bankruptcy to which he does not consent. Such a question must be answered in the negative. *Matter of Samuels,* 215 F. 845, 32 A.B.R. 436, 444–445 (2d Cir.1914) rev'g 207 F. 195, 30 A.B.R. 293 (S.D.N.Y.1913).

In still another case, the district court said:

[T]he bankruptcy court must in some manner have obtained jurisdiction over his assets as a partner in the firm.... I think that it may be regarded as definitely settled that a court of bankruptcy in proceedings against a partnership has no jurisdiction to administer upon the estate of an alleged secret partner without declaring him bankrupt....

*Matter of Kramer,* 218 F. 138, 33 A.B.R. 223, 227 (E.D.Pa.1914).

The court does not doubt that a proceeding against Gary Lamb should be classified as summary, but Charles Lamb did not join in the bankruptcy petition, and no petition has been filed against him. For the purpose of determining whether Charles Lamb is entitled to a jury trial, this proceeding must be classified as a plenary proceeding.

 The primary, if not the only, issue is whether Charles Lamb was a partner with Gary Lamb in the business known as Rubenstein's. The court believes Charles Lamb is entitled to a jury trial on this issue. This is essentially an action to collect a debt. At the least, this is an action by the trustee of an alleged partnership to enforce an alleged partner's liability for the partnership's debts. Section 723 makes a general partner liable for the partnership's debts once it is established that the partnership's assets are insufficient to pay its debts. Once liability is established, the trustee can proceed to collect as on any judgment. The trustee need not marshal the partner's assets so as to pay his individual creditors ahead of partnership creditors. Compare Bankruptcy Code § 723(b) & (d) and Bankruptcy Act § 5g. In these circumstances the present action is most like an action to collect a debt. The right to a jury trial in actions to collect debts is established. *United States v. Jepson,* 90 F.Supp. 983 (D.N.J. 1950).

The court has not found any decisions involving the question of right to a jury trial in a case exactly like this, but has found decisions in which the courts approved submission to the jury of the question of existence of a partnership. *Stockton v. Altman,* 432 F.2d 946 (5th Cir.1970); *Berry Refining Co. v. Salemi,* 353 F.2d 721 (7th Cir.1965); *Newrath v. Schwartz,* 292 F.2d 763 (D.C.Cir.1961).

Finally, the court is of the opinion that when in doubt it is best to favor granting a jury trial, especially in light of decisions by the Supreme Court that have required jury trials of issues that might have been decided by the judge under a strict historical test

of the nature of the suit. Wright & Miller, Federal Practice and Procedure § 2302 at 17–18 (1971).

The court concludes that Charles Lamb is entitled to a jury trial, and this proceeding must be referred to the district court for trial as required by part (d)(1) of the Emergency Rule.

The Emergency Rule leaves some doubt as to whether the bankruptcy court should decide the question of right to a jury trial. The district court might decide contrary to the bankruptcy court's decision, with the result that proceedings would be needlessly shuffled back and forth. The court will therefore certify its order to the district court for immediate review as allowed by part (e)(2)(A)(ii) of the Emergency Rule.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.